IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MARVIN JAY HUNT and COLBY ELIAS HUNT,<br><br>        Plaintiffs,<br><br>    vs.<br><br>IRON COUNTY, a body corporate and politic of the State of Utah; Iron County Sheriff MARK O. GOWER, individually, and in his official capacity; Deputy DAN RADDATZ, individually and in his official capacity; Deputy JEFF HUMPHRIES, individually and in his official capacity; Iron County Attorney SCOTT GARRETT, individually, and in his official capacity; STATE OF UTAH, by and through its state prosecutor, Iron County Attorney, Scott Garrett, and; JOHN/JANE DOES I through X,<br><br>        Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br><br>Case No. 2:15-CV-00700<br><br><br>Judge Clark Waddoups |

## INTRODUCTION

Ranchers in southwestern Utah frustrated by a neighbor's difficult roaming stallion finally took matters into their own hands when they corralled and castrated the problem horse in April, 2013. This action led to criminal charges of Wanton Destruction of Livestock against the plaintiffs in Iron County, as well as the lawsuit pending before this court.[1] Originally filed in 2015 while their criminal prosecutions were pending in state court, plaintiffs amended this

---

[1] The factual background is lengthy, well known to the parties, and outlined in the decision of the Utah Court of Appeals. *See State of Utah v. Hunt*, 2018 UT App 222 (Utah Ct. App. 2018). It will not be repeated here.

§ 1983 action as a matter of right three months later. (ECF No. 3.) In both initial complaints, plaintiffs sought for this court to certify an issue of first impression to the Utah Supreme Court, namely, that a legitimate finding of probable cause for the criminal charges against them depends on a determination of the animal's ownership by a brand inspector that complies with various statutory provisions of the Utah Livestock Brand and Anti-Theft Act.

Defendants moved to dismiss the amended complaint for two reasons. (ECF No. 6.) First, they alleged that plaintiffs would have a full and fair opportunity to litigate their statutory ownership arguments in the pending state criminal cases, such that *Younger* abstention applied and certification of the state issue was not necessary. Second, they alleged that plaintiffs' complaint otherwise failed to state a claim for relief under Rule 12(b)(6). The following day, defendants also answered the amended complaint. (ECF No. 7.)

Plaintiffs filed additional motions that led to the procedural posture now before the court. First, plaintiffs moved to amend (the court refers to this proposed complaint as "the first proposed second amended complaint"). (ECF No. 11.) Second, plaintiffs filed a motion for Rule 11 sanctions against defendants (ECF No. 25) and third, plaintiffs filed a conditional motion to stay defendants' Rule 12(b)(6) motion to dismiss in the event that the court exercised *Younger* abstention. (ECF No. 30.) A hearing was held on these motions. Following the hearing, the court granted the motion to stay this action until the underlying criminal prosecutions were completed and all appeals exhausted. The court also deferred ruling on the motion to dismiss (ECF No. 6) and the motion to amend the complaint (ECF No. 11), but denied the motion for sanctions. (ECF No. 25.)

Plaintiffs' criminal prosecutions and appeals became complete in 2018, when the Utah Court of Appeals issued its decision[2] and plaintiffs did not petition for review by the Utah Supreme Court. Plaintiffs withdrew their first motion to amend the complaint and filed a second motion to amend the complaint (ECF No. 47). This proposed amended complaint was subsequently revised twice, (ECF No. 50 and ECF No. 57-1), and the court refers to the proposal at ECF No. 57-1 as the "second proposed Second Amended Complaint."

Plaintiffs also filed a motion to lift the stay that had been in place while the underlying criminal matters and appeals were pending. Defendants did not object and the motion is GRANTED. (ECF No. 46.) The court does not believe that additional oral argument would be helpful in reaching its decision on the remaining motions. Accordingly, consistent with DUCivR7-1(f), the motions will be determined by the court on the basis of the previous arguments and the written memoranda of the parties.

## MOTION TO AMEND

Defendants argue that the court should decide their deferred motion to dismiss prior to considering the rather moving target of plaintiffs' motion to amend the complaint, including the various iterations of those proposed amended complaints. On one hand, it would be a more efficient use of the court's resources to consider the latest iteration of plaintiffs' second proposed Second Amended Complaint (ECF No. 57-1), because the resolution of the underlying criminal cases and appeal prompted plaintiffs to eliminate all references in earlier complaints to the statutory arguments about how to determine ownership of horses as well as to eliminate two

[2] *State of Utah v. Hunt*, 2018 UT App 222 (Utah Ct. App. 2018).

other claims outright.[3] On the other hand, plaintiffs' second proposed Second Amended Complaint problematically contains the statement that it does not stand alone, but rather "re-allege[s] and incorporate[s] by this reference any and all previous allegations set forth in previous pleadings, if applicable, including all previous factual allegations and all allegations regarding the legal bases and applicable law regarding Plaintiff(s)' claims." (Second proposed Sec. Am. Compl. ¶ 12, ECF No. 57-1.)

Ultimately, the court did examine the factual allegations in all versions of the complaint in deciding defendants' motion to dismiss (excluding the two eliminated causes of action). Because no version of the existing or proposed complaints survives defendants' motion to dismiss, *see infra*, the court DENIES plaintiffs' motion to amend the complaint. (ECF No. 47.)

## MOTION TO DISMISS

Dismissal under Rule 12(b)(6) "is appropriate only if the complaint, viewed in the light most favorable to plaintiff, lacks enough facts to state a claim to relief that is plausible on its face." *United States ex rel. Conner v. Salina Regional Health Center, Inc*., 543 F.3d 1211, 1217 (10th Cir. 2018). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice." *Khalik v. United Air* Lines, 671 F.3d 1188, 1191 (10th Cir. 2012) (*citing* Twombly, 550 U.S. at 555). Thus, factually unsupported conclusory allegations do

---

[3] Compared to the First Amended Complaint (ECF No. 3), plaintiffs' second proposed Second Amended Complaint eliminates a First Amendment free exercise of religion claim and a claim for Deliberate Indifference. (ECF No. 57-1.) The second proposed Second Amended Complaint adds no new causes of action.

not state a claim for relief. *Erickson v. Pawnee County Bd. of County Com'rs*, 263 F.3d 1151 (10th Cir. 2001). Additionally, the complaint must "make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her." *Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008).

"[I]n general, a motion to dismiss should be converted to a summary judgment motion if a party submits, and the district court considers, materials outside the pleadings." *Prager v. LaFaver*, 180 F.3d 1185, 1188 (10th Cir. 1999). Here, both parties submitted materials outside of the pleadings. The court need not convert a motion to dismiss to a motion for summary judgment, however, to consider facts subject to judicial notice, such as court files and records and facts which are a matter of public record. *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1279 n.1 (10th Cir. 2004). The court takes judicial notice only of the underlying state case pleadings, dockets, and decisions and thus does not convert this motion to dismiss to a summary judgment motion.

1. *First Amendment Retaliation Claim*

A claim for retaliation under the First Amendment requires plaintiffs to plead that they engaged in conduct protected under the First Amendment, that adverse action was taken against them that would deter a person of ordinary firmness from continuing to engage in that speech or conduct, and that the adverse action taken against them was "substantially motivated as a response to the plaintiff[s'] exercise of constitutionally protected conduct." *Klen v. City of Loveland, Colo.*, 661 F.3d 498, 508 (10th Cir. 2011). *See also Van Deelen v. Johnson*, 497 F.3d 1151, 1155–56 (10th Cir. 2015).

Both plaintiffs' first amended and proposed second amended complaints allege that plaintiffs repeatedly petitioned Iron County government officials for redress of grievances related to estray or feral horses as well as related to the horses of their neighbor, Mr. Allen Bailey, and Bailey's alleged vandalism, theft, and threats. Plaintiffs' speech and/or expressions of this type is protected under the First Amendment. *Van Deelen*, 497 F.3d at 1156. The complaints go on, however, to allege that eventually, on or about April 27, 2013, plaintiffs knowingly took matters into their own hands and castrated some of the feral, estray horses, as well as Mr. Bailey's problematic pinto stallion. (First Am. Compl. ¶ 52, ECF No. 2; second proposed Sec. Am. Compl. ¶ 20, ECF No. 57-1.) After this incident, both complaints allege that Iron County government officials began to engage in a host of adverse actions against plaintiffs, including arresting, searching, seizing, detaining, and prosecuting them for Wanton Destruction of Livestock, warning them that they could be charged with witness tampering or obstruction of justice if they attempted to contact or engage in settlement discussions or negotiations with Allen Bailey—who was a witness and a victim in the criminal prosecutions—and in doing so that defendants injured them by violating their First, Fourth, Fifth, and Fourteenth Amendment constitutional rights. (First Am. Compl. ¶¶ 125-128, ECF No. 2; second proposed Sec. Am. Compl. ¶¶ 60-62, ECF No. 57-1.)

Plaintiffs' First Amendment retaliation cause of action must fail because, on the face of the complaints, the specific adverse actions about which plaintiffs complain arose only after April 27, 2013 from plaintiffs' constitutionally unprotected conduct, namely, from plaintiffs knowingly castrating horses that did not belong to them. Under Utah law, this was criminal activity and not speech or expressive activity protected by the First Amendment. Furthermore,

the required nexus between the adverse actions defendants allegedly took and "the plaintiff's exercise of constitutionally protected conduct," *Klen*, 661 F.3d at 508, is missing. Plaintiffs have not adequately pled that the injuries they suffered as a result of defendants' adverse actions were substantially motivated in response to plaintiffs' protected, rather than unprotected, speech or activities. As a result, the plaintiffs' First Amendment retaliation cause of action fails to state a claim upon which relief can be granted and must be dismissed.[4]

2. *Warrantless search, seizure, arrest, detention of persons and property under the Fourth and Fourteenth Amendments*

Plaintiffs allege violations of the Fourth and Fourteenth Amendments based on allegations that defendants lacked probable cause to search, seize, arrest, or detain plaintiffs or their property. As previously noted, plaintiffs' second proposed Second Amended Complaint abandons the "Brand Certification of Livestock" requirement as an obstacle to probable cause, which was thoroughly litigated in state court where plaintiffs' arguments did not prevail. Instead, plaintiffs now argue that probable cause did not exist because law enforcement officers relied on Allen Bailey's statements of the value of the horses castrated by plaintiffs to justify a warrantless felony arrest rather than charging them with a misdemeanor. This argument is based on allegations in all versions of plaintiffs' complaints. (Compl. ¶ 74, ECF No. 2; First Am. Compl. ¶ 74, ECF No. 3; first proposed Sec. Am. Compl. ¶ 74, ECF No. 11-1; and second proposed Sec. Am. Compl. ¶¶ 23, 40, 73; ECF No. 57-1.)

Defendants argue that these claims are precluded because the Utah state courts have fully reviewed and ruled in their favor on plaintiffs' probable cause arguments, and in any event, there

---

[4] Plaintiffs' First Amendment retaliation cause of action is claim two in both the First Amended Complaint and the second proposed Second Amended Complaint.

was probable cause under the Fourth Amendment. Plaintiffs argue that the state court used an improper probable cause standard and thus their probable cause arguments are not precluded.

       a.  *Probable Cause Standard*

The court first considers whether the Utah courts evaluated probable cause under the proper standard. Calling Utah's bindover probable cause standard "meager," plaintiffs cite *State v. Clark*, 20 P.3d 300, 2001 UT 90 (2001), *State v. Ramirez*, 289 P.3d 444, 2012 UT 59 (2012), and *State v. Jones*, 365 P.3d 1212, 2016 UT 4 (2016) in support of their argument that Utah evaluates probable cause under a standard less rigorous than the standard required for Fourth Amendment purposes.

In *Clark*, the Utah Supreme Court reversed a district court order quashing a magistrate's order binding the defendants over for trial. The Court described the probable cause standard the prosecution must meet at a preliminary hearing as "sufficient evidence to establish that the crime charged has been committed and that the defendant has committed it." 2001 UT ¶ 10. The Court acknowledged that it had previously described this standard using various approaches, including "more than is required to establish probable cause for arrest," *id*. at ¶ 11, less than that required to "establish a prima facie case against defendant" and also "less than would prove the defendant guilty beyond a reasonable doubt," *id*., and "lower, even, than a preponderance of the evidence standard applicable to civil cases." *Id*. At the time of this 2001 case, the Court summarized its prior precedent as placing "the level of proof necessary to support a preliminary hearing bindover somewhere between the reasonable belief necessary to support a warrant and the preponderance of the evidence standard applicable in the civil context." *Id*.

Contrary to plaintiffs' argument, this case does not demonstrate that Utah's probable cause standard to bind a defendant over for trial is less than Fourth Amendment probable cause. The standard stated in *Clark* is at least as high as the standard required by the Fourth Amendment. Nor do the *Ramirez* and *Jones* cases state a lesser probable cause standard, notwithstanding plaintiffs' selective quotations about the "lowness" of the bindover standard. (Pls.' Reply Mem. 4, ECF No. 57.) As did the Utah Supreme Court in *Clark*, in *Jones* the Court emphasized that magistrate judges at a bindover hearing are not authorized "to second-guess the prosecution's evidence by weighing it against the totality of the evidence in search of the most reasonable inference to be drawn therefrom." *Jones*, 2016 UT at ¶ 21. *Compare Clark*, 2001 UT at ¶ 14 (clarifying that while the preponderance of the evidence standard requires weighing evidence, it is improper to weigh the evidence "at the preliminary hearing stage of a criminal proceeding.") *with Ramirez*, 2012 UT at ¶ 17 ("It is not the court's role in a preliminary hearing to hold the prosecution to the presentation of a comprehensive or 'best' case against the accused, [or to] weigh[] competing inferences and engag[e] in factfinding.")

Rather, all three cases relied on by plaintiffs emphasize the reasonable reliability standard plaintiffs agree is the correct Fourth Amendment probable cause standard. *See Jones*, 2016 UT at ¶ 42 ("The operative standard, again, is simply whether a reasonable officer, viewing the evidence in the light most favorable to the prosecution, could possibly conclude that each element of the offense in question was committed by defendant."); *Ramirez*, 2012 UT at ¶ 9 ("All that is required is reasonably believable evidence—as opposed to speculation—sufficient to sustain each element of the crime(s) in question."); *Clark*, 2001 UT at ¶ 15 ("We hold that to

prevail at a preliminary hearing, the prosecution must still produce believable evidence of all the elements of the crime charged.")

These statements echo statements made by the United States Supreme Court in Fourth Amendment probable cause cases cited to us by plaintiffs as examples of the proper standard. For example, in *Beck v. Ohio*, constitutionally valid probable cause is found when "at that moment the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense."[5] 379 U.S. 89, 91 (1964). Tenth Circuit precedent cited by plaintiffs state the probable cause standard similarly. "'Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense.'" *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002) (*quoting Jones v. City & County of Denver*, 854 F.2d 1206, 1210 (10th Cir. 1988). Relevant here, *Olsen* emphasized that while a court may evaluate probable cause based on such factors as whether "the officer reasonably interviewed witnesses readily available at the scene, whether he investigated basic evidence or whether he inquired if a crime had been committed at all," *id*., "none of these factors is dispositive or indeed necessary to the inquiry." *Id*. Instead, "[t]he primary concern is whether a reasonable officer would have believed that

---

[5] The court does not utilize *Tennessee v. Gardner*, 471 U.S. 1 (1985), as suggested by plaintiff, because that was a case involving officer use of deadly force, which is not at issue here.

probable cause existed to arrest the defendant based on the 'information possessed by the [arresting] office[r]'." *Id.* (*quoting Anderson v. Creighton*, 483 U.S. 635, 643 (1987).[6]

Based on all of the foregoing, the court concludes that Utah's probable cause standard for a preliminary "bindover" hearing is at least equivalent to the probable cause standard under the Fourth Amendment. Minor differences in word choice notwithstanding, the cases set forth essentially the same requirements. Having thus concluded, the court cannot consider plaintiffs' arguments that the state court improperly applied the standard to them until it considers whether issue preclusion prevents plaintiffs from claiming insufficiency of constitutionally valid probable cause when the state court has already reviewed and ruled that probable cause existed.

b. *Review of Probable Cause Determination is Barred by Issue Preclusion*

Issue preclusion prevents a party from relitigating any "issue once it has suffered an adverse determination on the issue, even if the issue arises when the party is pursuing or defending against a different claim." *Park Lake Resources Ltd. Liability v. U.S. Dep't of Agriculture*, 378 F.3d 1132, 1136 (10th Cir. 2004). The court begins by examining the first of four elements of issue preclusion, namely, whether "the issue previously decided is identical with the one presented in the action in question." *Id*. In this action, plaintiffs ask the court to decide that defendants lacked probable cause to search, seize, arrest, or detain plaintiffs and/or their property. At plaintiffs' November 13, 2013 preliminary hearing in state court in their criminal cases, after hearing from witnesses including Allen Bailey, a Utah magistrate judge bound plaintiffs over for trial after finding probable cause to believe that the felony crime of

---

[6] *See also Kerns v. Bader*, 663 F.3d 1173 (10th Cir. 2011) ("[T]he relevant question is whether a 'substantial probability' existed that the suspect committed the crime, requiring something 'more than a bare suspicion.'") (quoting *Taylor v. Meacham*, 82 F.3d 1556, 1562 (10th Cir. 1996) and *United States v. Ludwig*, 641 F.3d 1243, 125, (10th Cir. 2011)).

Wanton Destruction of Livestock had been committed on April 27, 2013. (*See* Compl. ¶ 108, ECF No. 2; First Am. Compl. ¶ 108, ECF No. 3; and first proposed Sec. Am. Compl. ¶ 111, ECF No. 11-1.) This determination was reviewed at a hearing by a Utah state district judge on January 27, 2015, where again, the court found probable cause to believe the offense had been committed and denied the motion to quash. (*See* Compl. ¶ 111, ECF No. 2; First Am. Compl. ¶ 111, ECF No. 3; and first proposed Sec. Am. Compl. ¶ 114, ECF No. 11-1.) As plaintiffs repeatedly allege in their complaint, the state court has at least twice decided the issue of probable cause, and not in their favor. This element of issue preclusion is met.

Second, the court examines whether "the prior action has been finally adjudicated on the merits." *Park Lake Resources*, 378 F.3d at 1136. The plaintiffs' Utah state convictions were challenged on direct appeal, on the grounds of both ownership and value of the castrated horses, and the Utah Court of Appeals upheld the convictions by decision dated November 29, 2018. The time for further direct appeal has expired. This element of issue preclusion is met.

The third element of issue preclusion is whether "the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication." *Id*. Defendants invoke the doctrine of issue preclusion against plaintiffs Marvin Jay and Colby Hunt. Marvin Jay Hunt was a party in the appeal of his state conviction. Colby Hunt was in privity with Marvin Hunt, as demonstrated by his conditional guilty plea in his state case that was expressly conditioned on the outcome of Marvin Hunt's appeal.[7] This element of issue preclusion is met.

---

[7] The court takes judicial notice of Colby Hunt's Statement of the Defendant in Support of Guilty Plea and Certificate of Counsel, and Order, Dkt. No. 189, Utah State case no. 131500548FS. It may do so without converting defendants' motion to dismiss to a summary judgment motion because the plea is a matter of public record in the underlying state court proceeding. *Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008).

Finally, the court examines whether "the party against whom the doctrine [of issue preclusion] is raised had a full and fair opportunity to litigate the issue in the prior action." *Park Lake Resources*, 378 F.3d at 1136. As noted previously, plaintiffs' complaints repeatedly acknowledge having challenged probable cause in the underlying state cases. While plaintiffs' second proposed Second Amended Complaint abandons the "Brand Certification of Livestock" ownership requirement as an obstacle to probable cause, and instead focuses on the allegedly improper reliance by law enforcement officers on Allen Bailey's statements of the value of the horses castrated by plaintiffs to justify a felony warrantless arrest, the record unquestionably reveals that plaintiffs had every opportunity to assert value as the basis and grounds for its probable cause arguments to the magistrate judge, district court judge, and again on appeal. Plaintiffs argue that "there was little overlap between the substantive facts, issues, claims and merits of the underlying criminal cases, and constitutional claims in this case, which focuses on how Plaintiffs were treated by Defendants in terms of applicable constitutional standards and requirements." (Mot. to Amend ¶ 5; ECF No. 47.) Plaintiffs are incorrect as to all claims that depend on probable cause for their support. Plaintiffs had notice and opportunity to be heard on the issue of probable cause throughout their state court proceedings. The state courts decided that issue and the Hunts lost.

All of the elements of issue preclusion are met. Accordingly, this court concludes that all of plaintiffs' proposed causes of action challenging probable cause are precluded. The bottom line is that defendants had testimony supporting sufficient value in the damaged horses to charge a felony offense. The state courts reviewed and rejected plaintiffs' challenges that the evidence was not sufficient. It is irrelevant to the analysis that a jury ultimately accepted that the evidence

did not sustain that value. The evidence has been repeatedly found sufficient to support probable cause. The majority of plaintiffs' claims are Fourth and/or Fourteenth Amendment claims based on the allegation of insufficient probable cause. The court is precluded from considering any of them, and they are appropriately dismissed.[8]

3. *Excessive Bail*

Plaintiffs allege violations of the prohibition against excessive bail in the Eighth Amendment of the U.S. Constitution. (Compl. ¶ 153, ECF No. 2; First Am. Compl. ¶ 153, ECF No. 3; first proposed Sec. Am. Compl. ¶¶ 165–69, ECF No. 11-1; second proposed Sec. Am. Compl. ¶¶ 83–88, ECF No. 57-1.) Plaintiffs' second proposed Second Amended Complaint also alleges a violation of Article I, Section 9 of the Utah State Constitution prohibiting excessive bail and treatment of arrested persons with unnecessary rigor.[9] (Second proposed Sec. Am. Compl. ¶ 84, ECF No. 57-1.) Bail was originally set at $10,000, and then reduced by the magistrate to $5,000 for each plaintiff.

"Bail is excessive when set at an amount higher than necessary to insure the appearance of the accused at trial." *Meechaicum v. Fountain*, 696 F.2d 790, 791 (1983). Utah's bail statute vests discretion in the magistrate or court setting the amount of bail. Utah Code Ann. § 77-20-1(3). Other than a conclusory allegation that the amount was "excessive," plaintiffs have not alleged any facts that could demonstrate that the magistrate abused his discretion in setting the amount of bail. Nor have plaintiffs alleged that defendants are the parties who set their bail or

---

[8] The dismissed causes of action in the First Amended Complaint are counts three, four, six, eight and the portion of nine that relies on insufficient probable cause as a ground for relief. The same causes of action in the second proposed Second Amended Complaint include counts four, five, six, eight, and the portion of nine that relies on insufficient probable cause as a ground for relief.
[9] The Utah Supreme Court has previously concluded that the unnecessary rigor clause of the Utah Constitution is not applicable to bail issues. *State v. M.L.C.*, 933 P.2d 380 (Utah 1997).

negatively affected its amount, because they allege that the magistrate reduced bail notwithstanding Attorney McUne's objections. Attorney McUne is not named as a defendant; rather, plaintiffs seek to hold Attorney Garrett responsible for McUne's objections, ineffective as they ultimately were.[10] (Compl. ¶¶ 85, 152–54, ECF No. 2; First Am. Compl. ¶¶ 85, 153–57, ECF No. 3; first proposed Sec. Am. Compl. ¶¶ 88, 165–69, ECF No. 11-1; and second proposed Sec. Am. Compl. ¶¶ 25, 83–88, ECF No. 57-1.) Plaintiffs' failure to allege sufficient non-conclusory facts to establish a claim that bail was set at an excessive amount, including by a defendant against whom this claim can be properly be made, is fatal. The plaintiffs' excessive bail cause of action is thus dismissed.[11] The paragraphs of plaintiffs' excessive bail cause of action that address the problems that occurred when Colby Hunt attempted to post the $5,000 bail set for him are addressed under the due process cause of action.

4. *Due Process*

The court previously concluded that plaintiffs are precluded from raising claims about a lack of constitutionally sufficient probable cause because that issue was fully and fairly litigated in state court. Those portions of plaintiffs' complaints alleging violations of their substantive and procedural due process rights on the ground of insufficient probable cause are thus necessarily dismissed. *See supra, fn.* 8. The court addresses here, nonetheless, plaintiffs' allegations about Colby Hunt's attempts to post bail, because while the allegation was perhaps inartfully pled as an excessive bail claim, this is the cause of action to which these allegations apply.

---

[10] The complaints are also devoid of any allegation that connects Attorney McUne to Attorney Garrett, nor of any allegation that asserts Attorney Garrett supervised Attorney McUne.
[11] This cause of action is count seven in both the First Amended Complaint and in the second proposed Second Amended Complaint.

Plaintiffs allege that because Colby Hunt was required to post bail of $10,000 instead of $5,000 as set by the magistrate that defendant Gower violated his constitutional rights. Plaintiffs set forth these factual allegations primarily in their Excessive Bail cause of action, although they more properly constitute an allegation of the deprivation of Colby Hunt's protected liberty interest under the Fourteenth Amendment. *See Meechaicum*, 696 F.2d at 791–72 ("[T]he right of an accused to freedom pending trial is inherent in the concept of a liberty interest protected by the due process clause of the Fourteenth Amendment.")

In various iterations of the complaint, plaintiffs allege that notwithstanding the magistrate judge having reduced bail to $5,000 at his initial appearance, the following individuals and/or entities refused to accept less than $10,000 bail before releasing Colby Hunt from custody: Iron County Sheriff's Office (ICSO), "Defendants," ICSO personnel, and Sheriff Gower (only in his supervisory capacity).[12] (Compl. ¶¶ 86, 126, 151–55, ECF No. 2; First Am. Compl. ¶¶ 86, 128, 153–57, ECF No. 3; first proposed Sec. Am. Compl. ¶¶ 89, 165–69, ECF No. 11-1; and second proposed Sec. Am. Compl. ¶¶ 26, 83–88, ECF No. 57-1.)

As presently pled—particularly because plaintiffs' second proposed Second Amended Complaint re-alleges and incorporates by reference "any and all previous allegations set forth in previous pleadings, if applicable, including all previous factual allegations and all allegations regarding the legal bases and applicable law regarding Plaintiff(s)' claims," (second proposed

---

[12] The court assumes that allegations against Attorney Garrett do not apply to plaintiffs' factual allegations about posting bail. Because plaintiffs' allegations about posting bail were made in their Excessive Bail cause of action, rather than in their Due Process cause of action, however, this is unclear in the complaints. Attorney Garrett is not alleged to have any control or policy-making authority over the jail or the county's correctional officers, and thus is not considered here.

Sec. Am. Compl. ¶ 12), this allegation lacks sufficient specificity as to the responsible party and thus fails to provide fair notice of this claim.

Even assuming plaintiffs' second proposed Second Amended Complaint is the final word on their allegations, Sheriff Gower is named only in his supervisory capacity. There is no allegation that Sheriff Gower personally refused to accept the $5,000 bond, nor that he instructed any Sheriff's department or jail personnel to refuse to accept the $5,000 bond. Further, "[a] plaintiff may succeed on a § 1983 supervisory-liability claim by showing that the defendant 'promulgated, created, implemented, or possessed responsibility for the continued operation of a policy that . . . caused the complained of constitutional harm' and 'acted with the state of mind required to establish the alleged constitutional deprivation.'" *Moya v. Garcia*, 895 F.3d 1229 (10th Cir. 2018) (*quoting Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010)). While plaintiffs have vigorously alleged throughout the complaints that Sheriff Gower had the state of mind to commit a constitutional violation, there are no non-conclusory allegations that he "promulgated, created, implemented, or possessed responsibility for the continued operation of a policy" of accepting less than court-ordered bail. *Contra Dodds*, 614 F.3d 1185. Thus, there is no factual basis to support liability against Sheriff Gower.

The court further concludes that plaintiffs should not be allowed to amend the complaint to state a cause of action on this claim. Under the Federal Rules of Civil Procedure, "A party may amend its pleadings once as a matter of course." Fed. R. Civ. P. 15(a). Plaintiffs have done that. The subsequent proposed pleadings fail to cure the deficiencies and amendment appears to be futile. "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies

by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). In total, the plaintiffs have already filed at least six versions of their complaint and/or proposed complaints, and none of them allege a factual basis for this claim against Sheriff Gower.

In addition, defendants specifically identified the deficiencies in the factual assertions supporting this claim and moved to dismiss it. In response, plaintiffs filed two motions for leave to amend that are silent about additional facts that would support liability on this claim. Neither motion even suggests that plaintiffs have additional facts that could be alleged sufficient to support Sheriff Gower's liability on this claim. Plaintiffs' reply memorandum specifically addresses the proposed amended supervisory liability claims and argues that they do not just claim that other defendants were merely acting with Sheriff Gower's "knowledge and acquiescence," but that Sheriff Gower was "intentionally directing the other Defendants' actions as part of a deliberate effort to retaliate against Plaintiffs." (Pls.' Reply Memo. 9-10, ECF No. 57.) The problem with this argument is that plaintiffs have never alleged anything but conclusory statements regarding Sheriff Gower's intentional direction, actions, or policies, and certainly none regarding the bail posting issue. Thus, this claim is dismissed and leave to amend is denied.

5.  *Selective Enforcement (Discrimination, Equal Protection)*

Plaintiffs allege, under the Fourteenth Amendment, that state officials singled them out for discriminatory and unequal treatment by selectively enforcing laws against them while similarly situated individuals—including Allen Bailey—were not prosecuted. A claim for selective enforcement requires plaintiffs to first allege specific facts, as opposed to conclusory statements, to show that "others similarly situated generally have not been proceeded against for

the type of conduct forming the basis of the charge" against them. *U.S. v. Salazar*, 720 F.2d 1482, 1487 (10th Cir. 1983). Second, plaintiffs must allege that "the selection has been invidious or in bad faith and based on intentional, purposeful discrimination stemming from impermissible considerations such as race, religion, or the desire to prevent the exercise of other constitutionally secured rights." *York v. Secretary of Treasury*, 774 F.2d 417, 422 (10th Cir. 1985).

Plaintiffs' various complaints fail to adequately allege the first element of a selective enforcement claim. They have not alleged the existence of any similarly situated individuals who engaged in the type of conduct for which plaintiffs were charged, specifically gelding animals belonging to others leading to a charge of Wanton Destruction of Livestock. At most, they have merely made wholly conclusory allegations that there are others similarly situated, including Allen Bailey. With respect to Bailey's conduct, however, they allege he engaged in trespassing, vandalizing, stealing water and personal property, and telephone threats. (First Am. Compl. ¶¶121–22, 165, ECF No. 3; first proposed Sec. Am. Compl. ¶¶ 125–26, 177, ECF No. 11-1; and second proposed Sec. Am. Compl. ¶¶ 18–19, 30, 65–66, ECF No. 57-1.) This is not the same or similar conduct as plaintiffs' conduct.

There is no allegation in any of the complaints that identify any individuals who engaged in the same conduct as plaintiffs but were not prosecuted, which is fatal to their claim because it

does not meet the first element of the cause of action.[13] Thus, plaintiffs have failed to adequately allege a selective enforcement claim and this claim is dismissed.[14]

6. *Just Compensation*

Plaintiffs allege that one of their horses was damaged when it panicked and ran into a squeeze chute and was injured during a nighttime search of horses in their corral by Deputy Humphries on November 6, 2013. Plaintiffs also allege that Deputy Humphries also told them they could not sell a brown gelding in their corral pending DNA testing. They further allege that Deputy Humphries informed them on this date that he was investigating a claim by Allen Bailey of the theft of a pinto and/or brown gelding horse.[15] (First Am. Compl. ¶¶ 87, 89–94, 129, 158, ECF No. 3; first proposed Sec. Am. Compl. ¶¶ 90, 92–94, 180, ECF No. 11-1; and second proposed Sec. Am. Compl. ¶¶ 27, 89, 95, ECF No. 57-1.) These actions, plaintiffs allege, amount to property damage and deprival of their property without due process or just compensation.

The takings clause of the Fifth Amendment, which applies to the states through the Fourteenth Amendment, provides as follows: "[N]or shall private property be taken for public use, without just compensation." U.S. Const. amend. V. None of plaintiffs' complaints assert that defendants damaged or took their property for "public use." Additionally, plaintiffs failed to respond to this argument in defendants' motion to dismiss and did not allege otherwise in their

---

[13] Even if the court were to consider the separate conduct of Allen Bailey, it could take judicial notice that Iron County officials subsequently charged him with six counts of criminal trespass and one count of threat of violence.

[14] Plaintiffs' selective enforcement claim is count ten in the First Amended Complaint and count three of the second proposed Second Amended Complaint.

[15] The court notes that these incidents took place prior to plaintiffs' Preliminary Hearing on November 13, 2013.

subsequently proposed complaints. Based on this, the court dismisses plaintiffs' takings claim for failure to state a claim on which relief can be granted.[16]

7. *Municipal Liability*

Plaintiffs allege that Iron County is responsible for violating their constitutional rights under a theory of municipal liability. "Municipalities can be liable under 42 U.S.C. § 1983 only for their own unlawful acts." *Pyle v. Woods*, 874 F.3d 1257, 1266 (10th Cir. 2017). To state a cause of action under this theory, plaintiffs must allege "the existence of a municipal policy or custom which directly caused the alleged injury." *Id.* "A policy or custom includes a formal regulation or policy statement, an informal custom that amounts to a widespread practice, decisions of municipal employees with final policymaking authority, ratification by final policymakers of the decisions of subordinates to whom authority was delegated, and the deliberately indifferent failure to adequately train or supervise employees." *Id.* A custom, even if not formally approved by the relevant decision maker(s), must have "such widespread practice as to have the force of law," and result in actions that are "continuing, persistent and widespread." *Carney v. City and County of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008). Showing such a custom requires allegations of similar mistreatment of similarly situated individuals within the municipality. *Id.* Plaintiffs must also allege how such policies or customs were causally linked to a particular violation of their rights. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 659 (1978).

Plaintiffs' various complaints are entirely void of allegations of either formal or informal policies or customs of Iron County officials leading to constitutional violations. Instead, the complaints merely contain conclusory statements that defendants "engaged in policies,

---

[16] Plaintiffs' just compensation claim is count eleven in the First Amended Complaint and count ten in the second proposed Second Amended Complaint.

procedures, customs, practices, training, and supervision" that resulted in violation of their constitutional rights. Plaintiffs also fail to allege similarly situated individuals being similarly mistreated to demonstrate the existence of an informal policy or custom to violate constitutional rights. They fail to allege specific facts demonstrating a causal link between Iron County policies or customs of violating constitutional rights to a particular violation of plaintiffs' rights. Instead, they merely state the elements of the cause of action and conclusorily claim that defendants engaged in this conduct. Without sufficient factual allegations to support a reasonable inference of a municipal liability cause of action, however, the court must dismiss this cause of action.[17]

    8.  *Declaratory Judgment*

Plaintiffs' first cause of action in both the First Amended Complaint and the second proposed Second Amended Complaint is for Declaratory Judgment. In the First Amended Complaint, this claim primarily addresses the brand inspection of ownership issue in determining probable cause for a charge of Wanton Destruction of Livestock, which the plaintiffs have now abandoned. (First Am. Compl. ¶¶ 123–26, ECF No. 3.) The court dismisses this count.

In the second proposed Second Amended Complaint, plaintiffs seek declaratory judgment that their constitutional rights were violated under every other cause of action pled elsewhere in the complaint. The court has already determined that none of the other causes of action state claims upon which relief can be granted; thus, paragraphs A through J of plaintiffs' first cause of action in the second proposed Second Amended Complaint are dismissed for the same reasons. In paragraph K, however, plaintiffs seek a determination that was not previously pled. This paragraph states: "Determination as to whether, following the outcome of the Jay Hunt trial,

---

[17] Plaintiffs' municipal liability claim is count thirteen in the First Amended Complaint and count eleven in the second proposed Second Amended Complaint.

Defendants threatened to "break the bank" in an attempt to crush Plaintiff Colby Hunt by convicting him of a serious felony, in further demonstration of their malice and ill-will towards Plaintiffs Hunt." (Second proposed Sec. Am. Compl. ¶ 59(K), ECF No. 57-1. *See also* ¶ 43.)

The alleged threatening statement does not state a claim for relief itself. At best, and based on the number of times plaintiffs use the term "malice" or "malicious" throughout the complaint, the court concludes that they are attempting to state a claim for malicious prosecution. If so, the claim must be dismissed. A § 1983 "malicious prosecution claim includes the following elements: (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Wilkins v. DeReyes*, 528 F.3d 790, 799 (2008). Plaintiffs here were convicted of the criminal charges against them, and, as noted above, the state court found that probable cause supported the prosecution. Thus, this paragraph does not state a claim for relief and is dismissed.

## CONCLUSION

The court understands the plaintiffs' frustration with the Sheriff's Office's failure to respond to their complaints about stray horses and the impact their neighbor's conduct was having on them and their operations. In a civil society, however, a party cannot simply take the law into his own hands and use self-help in disregard of another's property and legal rights. No matter how frustrating, the plaintiffs were required to seek legal recourse, not self-help. The claims plaintiffs now attempt to assert fail for the reasons stated above. The motion to lift the

stay is GRANTED (ECF No. 46), defendants' Motion to Dismiss is GRANTED (ECF No. 6),

and plaintiffs' Motion to Amend is DENIED. (ECF No. 47.)

SO ORDERED this 27th day of February, 2019.

BY THE COURT:

Clark Waddoups
United States District Court Judge